UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO

| | | |
|---|---|---|
| KAREN BILLOCK, | ) | CASE NO. 3:07 CV 234 |
| | ) | |
| Plaintiff, | ) | JUDGE DAVID A. KATZ |
| | ) | |
| v. | ) | |
| | ) | OPINION AND ORDER |
| WYANDOT COUNTY | ) | |
| CHILDREN'S SERVICES, et al., | ) | |
| | ) | |
| Defendants. | ) | |

On January 29, 2007, pro se plaintiff Karen Billock, on behalf of herself and her minor children Nyssa McNamara and Zandria Billock filed the above-captioned action under 42 U.S.C. § 1983 against the Wyandot County Children Services ("WCCS"), the Wyandot County Juvenile Court, WCCS Director Thomas Bennet, WCCS Supervisor Julie Brickner, WCCS Caseworker Angela Crace, WCCS Caseworker Julie Combs, Wyandot County Juvenile Court Judge Kathern Aulbry, Wyandot County Juvenile Court Appointed Social Advocate ("CASA") Janie Eisenheart, Attorney Dennis Phiefer, Leo Gallant and Melissa Gallant.  In the complaint, plaintiff alleges that her daughter, Zandria, was removed from her home by WCCS after Zandria's step-mother reported abuse and neglect.  She claims the defendants violated their rights under the Fourth

and Fourteenth Amendments. She seeks monetary damages. Ms. Billock also filed an Application to Proceed In Forma Pauperis. That Application is granted.

## Background

Ms. Billock states that she is the mother of two minor children, Zandria Billock and Nyssa McNamara. Zandria was born to Ms. Billock and Leo Gallant in November 2003. Leo Gallant is married to Melissa Gallant. Ms. Billock contends that Melissa Gallant repeatedly contacted WCCS to report that Zandria was abused and neglected by Ms. Billock. In September 2005, Ms. Gallant contacted the Wyandot County Sheriff's Department claiming that a physician examined Zandria and recommended that Mr. Gallant not return the child after her visit. The Sheriff's Office allegedly investigated the allegations and returned Zandria to Ms. Billock.

Another allegation was made by Ms. Gallant in March 2006. Ms. Gallant reported to WCCS that Ms. Billock was asleep in the home while her children were awake and unsupervised. Ms. Billock claims that the children were in bed with her until her sister arrived and offered to watch the children while Ms. Billock slept. She contends that Caseworker Angie Crase did not interview her sister.

Ms. Gallant also reported that Ms. Billock padlocked her children in their bedrooms. Ms. Gallant claimed that the information came from someone who observed the home during the weekend of March 21, 2006. Ms. Billock denies these charges as well, stating that Zandria was with the Gallants that weekend and could not have been observed locked in her room. She also declares that Zandria's room has no door and that Nyssa's door is impossible to padlock. Ms. Billock claims she was told by Ms. Crase that although she could find no evidence of these allegations, she was certain Ms. Billock was culpable of the offense.

2

Ms. Billock alleges that Ms. Gallant reported to WCCS that Nyssa nicked Zandria on the ear while cutting her hair. Ms. Billock does not deny that Nyssa was cutting Zandria's hair, but denies that any injury occurred.

The allegations became more serious in April 2006. Social Worker Julie Combs received a telephone call from the Wyandot County Sheriff's Office on April 7, 2006 indicating that they were concerned with bruises on Zandria's buttocks. Ms. Billocks states that photographs were taken of the bruises and Leo Gallant was instructed to take Zandria to the emergency room to see if the bruises were consistent with abuse. She contends that Mr. Gallant first took Zandria to Wyandot Memorial Hospital; however, the treating physician would not speculate on the cause of the bruises. Mr. Gallant then took Zandria to the Bucyrus Community Hospital to get a second opinion. Ms. Billock alleges that Mr. Gallant varied his story to the Bucyrus physician and this time received a diagnosis of suspected abuse. Ms. Combs advised Mr. Gallant to keep Zandria beyond the end of the weekend visitation and assured him that Ms. Crace would take over the case on Monday.

Ms. Crace met with Ms. Billock, Zandria, and Leo Gallant on April 10, 2006. Ms. Billock contends Ms. Crace made it very clear that she was not going to be impartial in her investigation and that she had already formed an opinion about the allegations. Ms. Billock told Ms. Crace that Zandria had fallen down the stairs sometime between 6:00 p.m. and 9:00 p.m. on April 6, 2006 and that she assumed the bruises had come from that incident. Another witness, Tiffany Hoffbauer spoke to Ms. Crace confirming that Zandria had been at her home most of the weekend in question and had no bruises at 6:00 p.m. that evening. Ms. Billock alleges that Ms. Crace seemed uninterested in the information provided by Ms. Hoffauer. She claims Ms. Crace

3

also interviewed Zandria's four year old sister, Nyssa. Nyssa denied that she had been locked in her room or physically disciplined.

At that meeting, Ms. Crace presented Ms. Billock with a Family Decision Making Model Safety Plan for Children ("the Plan"). Ms. Billock contends that the Plan placed Zandria with her father and prohibited Ms. Billock from having any contact with her daughter. She refused to consent to the implementation of the Plan. She claims Ms. Crace nevertheless encouraged Mr. Gallant to keep Zandria in his custody in violation of the standing court order controlling custody and visitation. Ms. Billock contends Ms. Crace threatened her by saying that if she was forced to get a court order to gain temporary possession of Zandria, she would also seek temporary possession of Nyssa. She gave Ms. Billock until the next day to agree to the Plan.

On April 12, 2006, Ms. Billock informed Ms. Crace that should would not sign the Plan and relinquish custody of Zandria. Ms. Crace told her that Mr. Gallant would not return Zandria and that Nyssa, who was visiting her father, would not come home either. Nyssa, however, was promptly returned at the conclusion of the visitation. Mr. Gallant, through his attorney Dennis Phiefer, filed a petition in the Wyandot Juvenile Court on April 12, 2006 seeking an emergency ex parte order for temporary custody of Zandria. Ms. Billock alleges that Mr. Gallant and his attorney included incorrect information in the petition which misled the court into believing that the Plan had been put into place. Wyandot Juvenile Court Judge Kathreen Aulbry, granted the ex parte motion and set the matter for hearing. Ms. Billock claims that the hearing was continued several times because Ms. Crace did not appear in court. Finally on December 11, 2006, the court determined that the case should proceed without the testimony of Ms. Crace. Julie Brickner was permitted to testify in her place. Ms. Billock claims Judge Aulbry appointed CASA worker Janie

Eisenheart to protect Zandria's best interest. Ms. Eisenheart recommended that Zandria be placed with Mr. Gallant because, in her opinion, Ms. Billock was mentally unstable. She also recommended that Ms. Billock have only supervised visitation with her daughter. Ms. Billock alleges that Ms. Eisenheart had a personal relationship with Melissa Gallant and was therefore unable to be objective. Ms. Billock does not indicate whether the court has its decision.

The complaint contains thirteen causes of action. First, Ms. Billock asserts that the defendants took Zandria without a court order, thereby depriving her of her right to the care custody and companionship of her child without due process of law in violation of the Fourteenth Amendment. She also claims Zandria's Fourteenth Amendment rights were violated by the defendants' actions. In Count III of the complaint, Ms. Billock asserts that Judge Aulbry and the Wyandot Juvenile Court denied her procedural due process when the court granted temporary custody of Zandria to Mr. Gallant. She also asserts that Zandria's right to be free from unlawful searches and seizures was violated by the defendants. She claims that her separation from Zandria constituted an unconscionable abuse of government authority which denied her substantive due process. Ms. Billock contends she was denied equal protection of the law because she was treated differently from those similarly situated to her without a rational basis. The remaining claims assert violations of Ohio law. She seeks unspecified compensatory and punitive damages.

**Analysis**

Although pro se pleadings are liberally construed, Boag v. MacDougall, 454 U.S. 364, 365 (1982) (per curiam); Haines v. Kerner, 404 U.S. 519, 520 (1972), the district court is required to dismiss an in forma pauperis action under 28 U.S.C. §1915(e) if it fails to state a claim

5

upon which relief can be granted, or if it lacks an arguable basis in law or fact.[1] Neitzke v. Williams, 490 U.S. 319 (1989); Lawler v. Marshall, 898 F.2d 1196 (6th Cir. 1990); Sistrunk v. City of Strongsville, 99 F.3d 194, 197 (6th Cir. 1996). For the reasons stated below, this action is dismissed pursuant to §1915(e).

## Claims of Minor Children

Although Ms. Billock identifies her two children as additional plaintiffs, the complaint contains only her signature. In general, a party may plead and conduct his or her case in person or through a licensed attorney. See 28 U.S.C. § 1654; Eagle Associates v. Bank of Montreal, 926 F.2d 1305, 1308 (2d Cir. 1991).[2] An adult litigant who wishes to proceed pro se must personally sign the complaint to invoke this court's jurisdiction. See 28 U.S.C. § 1654; Steelman v. Thomas, No. 87-6260, 1988 WL 54071 (6th Cir. May 26, 1988). A minor child must appear through counsel and cannot be represented by a non-attorney, even if the non-attorney is the child's parent. Meeker v. Kercher, 782 F.2d 153, 154 (10th Cir. 1986); Lawson v. Edwardsburg Public School, 751 F.Supp. 1257 (W.D. Mich. 1990). Only Ms. Billock's signature appears on the

---

[1] An in forma pauperis claim may be dismissed sua sponte, without prior notice to the plaintiff and without service of process on the defendant, if the court explicitly states that it is invoking section 1915(e) [formerly 28 U.S.C. § 1915(d)] and is dismissing the claim for one of the reasons set forth in the statute. McGore v. Wrigglesworth, 114 F.3d 601, 608-09 (6th Cir. 1997); Spruytte v. Walters, 753 F.2d 498, 500 (6th Cir. 1985), cert. denied, 474 U.S. 1054 (1986); Harris v. Johnson, 784 F.2d 222, 224 (6th Cir. 1986); Brooks v. Seiter, 779 F.2d 1177, 1179 (6th Cir. 1985).

[2] 28 U.S.C. § 1654 provides:

> In all courts of the United States the parties may plead and conduct their own cases personally or by counsel as by the rules of such courts, respectively, are permitted to manage and conduct cases therein.

pleading. There is no indication that Ms. Billock is a licensed attorney authorized to represent the remaining plaintiffs. Consequently, the only claims properly before this court are those of Karen Billock. This court will address only those claims. The claims asserted on behalf of Zandria Billock and Nyssa McNamara are dismissed.

## Parties

To establish a prima facie case under 42 U.S.C. § 1983, plaintiff must assert that a person acting under color of state law deprived her of rights, privileges, or immunities secured by the Constitution or laws of the United States. Parratt v. Taylor, 451 U.S. 527, 535 (1981). Generally to be considered to have acted "under color of state law," the person must be a state or local government official or employee. A private party may be found to have acted under color of state law to establish the first element of this cause of action only when the party "acted together with or ... obtained significant aid from state officials" and did so to such a degree that its actions may properly be characterized as "state action." Lugar v. Edmondson Oil Co., 457 U.S. 922, 937 (1982). An individual may also be considered a state actor if he or she exercises powers traditionally reserved to a state. Jackson v. Metropolitan Edison Co., 419 U.S. 345, 352 (1974).

Several of the defendants are not government officials or employees. Leo and Melissa Gallant are private citizens. Merely being a participant in litigation does not make a private party a co-conspirator or joint actor with the state. Dennis v. Sparks, 449 U.S. 24, 28 (1980). Similarly, CASA worker Janie Eisenheart and Attorney Dennis Phiefer are involved in the litigation but are not government officials for purposes of § 1983. Washington v. Brewer, No. 91-1935, 1991 WL 243591 (6th Cir. Nov. 21, 1991); see also, Polk County v. Dodson, 454 U.S. 312, 321 (1981). The complaint contains no other allegations against these defendants which could

7

reasonably suggest that they acted "under color of state law."

Although Juvenile Court Judge Kathern Aulbry can be considered to be a "state actor" under § 1983, she is entitled to absolute immunity from damages. Mireles v. Waco, 502 U.S. 9, 9 (1991); Barnes v. Winchell, 105 F.3d 1111, 1115 (6th Cir. 1997).  Judges are accorded this broad protection to ensure that the independent and impartial exercise of their judgment in a case is not impaired by the exposure to damages by dissatisfied litigants. Barnes, 105 F.3d at 1115. For this reason, absolute immunity is overcome only in two limited situations: (1) when the conduct alleged is performed at a time when the defendant is not acting as a judge; or (2) when the conduct alleged, although judicial in nature, is taken in complete absence of all subject matter jurisdiction of the court over which he or she presides. Mireles, 502 U.S. at 11-12; Barnes, 105 F.3d at 1116. Stump, 435 U.S. at 356-57.  A judge will be not deprived of immunity even if the action he or she took was performed in error, done maliciously, or was in excess of his or her authority.  Ms. Billock clearly disagrees with the initial decision of Judge Aulbry to grant the ex parte temporary custody order and states that the information upon which the Judge relied was false or misleading. If these allegations are true, Ms. Billock's remedy is an appeal of the decision.  She has not stated a basis for recourse against the Judge for damages under 42 U.S.C. §1983.

In addition to establishing state action, the plaintiff must also establish that the defendant's own conduct violated the plaintiff's constitutional rights. Section 1983 does not permit a plaintiff to sue on the theory of respondeat superior. Monell v. New York City Dep't of Soc. Servs., 436 U.S. 658, 692- 94 (1978).  As a rule, local governments may not be sued under 42 U.S.C. § 1983 for an injury inflicted solely by employees or agents. See Monell v. Department of Soc. Servs., 436 U.S. 658, 691(1978). "Instead, it is when execution of a government's policy or

8

custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under §1983." Id. at 694. A municipality can therefore be held liable when it unconstitutionally "implements or executes a policy statement, ordinance, regulation, or decision officially adopted by that body's officers." Id. at 690; DePiero v. City of Macedonia, 180 F.3d 770, 786 (6th Cir. 1999). Ms. Billcock claims that the Wyandot County Juvenile Court and Wyandot County Child Services each had policies of seizing minor children from their parents without prior judicial process. Ohio Revised Code §2151.31 authorizes the removal of a child from the home without a prior hearing. She also alleges that they ratified the conduct of their employees through "improper discharge of their duties to oversee and supervise." (Compl. at 19,22.) This is just another way of saying that liability is based on a theory of respondeat superior, and is not a proper claim under §1983.

Ms. Billock also includes claims against WCCS Director Thomas Bennet and WCCS Supervisor Julie Brickner. There are no allegations in the complaint which directly pertain to these two defendants. "Supervisory liability under § 1983 cannot attach where the allegation of liability is based upon a mere failure to act." Bass v. Robinson, 167 F.3d 1041, 1048 (6th Cir.1999) (citing Leach v. Shelby County Sheriff, 891 F.2d 1241, 1246 (1989)). Rather, the supervisors must have actively engaged in unconstitutional behavior. Id. Therefore, liability must lie upon more than a mere right to control employees and cannot rely on simple negligence. Id. The complaint contains no allegation which reasonably suggests that these two individuals personally engaged in conduct which violated Ms. Billock's constitutional rights.

### **Younger Doctrine**

9

Moreover, Ms. Billock is, in essence, asking this court to decide issues which are at the heart of a state court matter which appears to be pending in the Wyandot County Juvenile Court. A federal court must decline to interfere with pending state proceedings involving important state interests unless extraordinary circumstances are present. See Younger v. Harris, 401 U.S. 37, 44-45 (1971). When a person is the target of an ongoing state action involving important state matters, he or she cannot interfere with the pending state action by maintaining a parallel federal action involving claims that could have been raised in the state case. Watts v. Burkhart, 854 F.2d 839, 844-48 (6th Cir.1988). If the state defendant files such a case, Younger abstention requires the federal court to defer to the state proceeding. Id; see also Pennzoil Co. v. Texaco, Inc., 481 U.S. 1, 15 (1987). Based on these principles, abstention is appropriate if: (1) state proceedings are on-going; (2) the state proceedings implicate important state interests; and (3) the state proceedings afford an adequate opportunity to raise federal questions. Middlesex County Ethics Comm. v. Garden State Bar Ass'n, 457 U.S. 423, 432 (1982). Abstention is mandated whether the state court proceeding is criminal, quasi-criminal, or civil in nature as long as federal court intervention "unduly interferes with the legitimate activities of the State." Younger, 401 U.S. at 44.

All three factors supporting abstention are present in this case. Ms. Billock's claims are all centered on her contention that she did not abuse or neglect Zandria and therefore the state lacked cause to remove Zandria from her custody and to place conditions on her return. These matters presented in the complaint are clearly the subject of a pending child custody case, which is of paramount state interest. Doscher v. Menifee Circuit Court, No. 03-5229, 2003 WL 22220534 (6th Cir. Sept. 24, 2003)(finding that Younger abstention was required in plaintiff's challenge to a state court foreclosure action). There is no indication in the complaint that Ms. Billock cannot

10

raise her arguments in the course of the state court litigation. Consequently, this court must abstain from hearing this case.

### Rooker-Feldman Doctrine

To the extent that the Wyandot County Juvenile Court may have already issued its decision in the custody action, this court lacks jurisdiction to entertain a challenge to that judgment. United States District Courts do not have jurisdiction over challenges to state court decisions even if those challenges allege that the state court's action was unconstitutional. See District of Columbia Court of Appeals v. Feldman, 460 U.S. 462, 483 n. 16 (1983); Rooker v. Fidelity Trust Co., 263 U.S. 413, 415-16 (1923). Federal appellate review of state court judgments can only occur in the United States Supreme Court, by appeal or by writ of certiorari. Id. Under this principle, generally referred to as the Rooker-Feldman Doctrine, a party losing his case in state court is barred from seeking what in substance would be appellate review of the state judgment in a United States District Court based on the party's claim that the state judgment itself violates his or her federal rights. Johnson v. DeGrandy, 512 U.S. 997, 1005-06 (1994). Federal jurisdiction cannot be invoked merely by couching the claims in terms of a civil rights action. Lavrack v. City of Oak Park, No. 98-1142, 1999 WL 801562 *2 (6th Cir. Sept. 28, 1999); see also, Valenti v. Mitchell, 962 F.2d 288, 296 (3d Cir.1992).

The United States Court of Appeals for the Sixth Circuit has applied two elements to a Rooker-Feldman analysis. First, in order for the Rooker-Feldman doctrine to apply to a claim presented in federal district court, the issue before the court must be inextricably intertwined with the claim asserted in the state court proceeding. Catz v. Chalker, 142 F.3d 279, 293 (6th Cir. 1998); see Tropf v. Fidelity National Title Insurance Co., 289 F.3d 929, 937 (6th Cir. 2002). "Where

11

federal relief can only be predicated upon a conviction that the state court was wrong, it is difficult to conceive the federal proceeding as, in substance, anything other than a prohibited appeal of the state court judgment." Catz, 142 F.3d at 293. The Rooker-Feldman doctrine applies when the party losing his case in state court files suit in federal district court seeking redress for an injury allegedly caused by the state court's decision itself. Coles v. Granville, 448 F.3d 853, 857-59 (6th Cir. 2006). Second, the Rooker-Feldman doctrine precludes a district court's jurisdiction where the claim is a specific grievance that the law was invalidly or unconstitutionally applied in plaintiff's particular case as opposed to a general constitutional challenge to the state law applied in the state action. Id.; Tropf, 289 F.3d at 937.

The claims in Ms. Billock's complaint directly attack the state court's decision to remove Zandria from Ms. Billock's home and place her with her father. All of the allegations in these causes of action concern specific grievances that the law was incorrectly applied in the decision to grant the ex parte order, and to the extent that it became a final order of the court, were clearly predicated on her belief that the state court was mistaken in rendering its decisions against her. Any review of the constitutional claims asserted in this context would require the court to review the specific issues addressed in the state court proceedings against her. This court lacks subject matter jurisdiction to conduct such a review or grant the relief as requested. Feldman, 460 U.S. at 483-84 n. 16; Catz, 142 F.3d at 293.

## Conclusion

Accordingly, Ms. Billock's Application to Proceed In Forma Pauperis is granted and this action is dismissed pursuant to 28 U.S.C. § 1915(e). Further, the court certifies pursuant to 28

U.S.C. § 1915(a)(3) that an appeal from this decision could not be taken in good faith.[3]

       IT IS SO ORDERED.

                                     /s/ David A. Katz

                              DAVID A. KATZ
                              UNITED STATES DISTRICT JUDGE

---

[3]    28 U.S.C. § 1915(a) provides, in pertinent part:

     An appeal may not be taken <u>in forma pauperis</u> if the trial court certifies that it is not taken in good faith.